# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD FOSTER JR., <br><br> Plaintiff, <br><br> v. <br><br> L. WALLACE, <br><br> Defendant. | Case No. 1:19-cv-00987-SAB <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART MOTION FOR AN ORDER DISMISSING THE ACTION OR ALTERNATIVELY, REVOKING PLAINTIFF'S *IN FORMA PAUPERIS* STATUS ON THE MERITS; DENYING DEFENDANT'S MOTION TO STAY AS MOOT; VACATING JUNE 2, 2020 DISCOVERY AND SCHEDULING ORDER; AND REQUIRING PLAINTIFF TO PAY THE FILING FEE IN THIS MATTER <br><br> (ECF Nos. 31, 32-33, 34, 36) <br><br> FORTY-FIVE DAY DEADLINE |

Currently pending before the Court is Defendant Wallace's motion for summary judgment, motion to dismiss or in the alternative revoke Plaintiff's *in forma pauperis* status, and motion to stay this action. (ECF Nos. 31, 32-33, 34.) Pursuant to Local Rule 230(l), this matter is submitted on the pleadings without oral argument.

/ / /

/ / /

/ / /

1

# I.

# BACKGROUND

Floyd Foster Jr. ("Plaintiff") was arrested on October 19, 2017, for driving under the influence ("DUI") and was charged with a parole violation. (Sec. Am. Compl. ("SAC") ¶ 1, ECF No. 13.) Plaintiff made an appearance in the state court on October 27, 2017, and a motion to withdraw the parole hold was granted by the state court and the court ordered the parole hold be released. (Id. at ¶ 2.) Plaintiff was held over on the DUI charge with bail set at $289,500.00. (Id.) Parole Agent L. Wallace ("Defendant" was ordered to notify the Fresno County Sheriff's Office ("FCSO") that the parole hold was to be released. (SAC 6.) Defendant did not notify the FCSO that the parole hold was to be released. (Id.)

Upon returning to the jail, Plaintiff contacted Aladdin Bail Bonds and tried to post bail but could not because the parole hold was in effect. (Id.) From October 27, 2017 through December 17, 2017, Plaintiff attempted to make bail but was unable to do so because the parole hold had not been released. (Id. at ¶ 3.) On December 17, 2017, Plaintiff notified the Court that the parole hold was still in place . (Id. at ¶ 4.) On December 22, 2017, the court reissued the minute order removing the parole hold on Plaintiff and specifically directed Defendant to communicate the order to the FCSO. (Id. at ¶ 5.) On January 4, 2018, the court sent an order to remove the parole hold to all parties. (Id. at ¶ 6.) Plaintiff could only be held on the parole hold until January 17, 2018. (Id. at ¶ 7.)

On July 3, 2018, Plaintiff appeared in court and Defendant admitted that she had failed to have the parole hold released. (Id. ¶ 8.) The parole hold was released on July 27, 2018, however Plaintiff no longer had bail in place due to the length of the delay in releasing the parole hold. (Id. at ¶ 9.)

Plaintiff, proceeding pro se and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 on July 18, 2019. (ECF No. 1.) On July 29, 2019, a screening order issued finding that Plaintiff had failed to state a cognizable claim and he was granted leave to file an amended complaint within thirty days. (ECF No. 5.)

Plaintiff filed a first amended complaint on August 23, 2019. (ECF No. 7.) On August

28, 2019, a screening order issued finding that Plaintiff had failed to state a cognizable claim and he was granted leave to file a second amended complaint within thirty days. (ECF No. 8.) Plaintiff did not timely file a second amended complaint, and on October 3, 2019, findings and recommendations issued recommending that this action be dismissed. (ECF No. 10.) Plaintiff filed objections to the findings and recommendations on October 15, 2019. (ECF No. 11.) On October 17, 2019, an order issued vacating the findings and recommendations and granting Plaintiff an extension of time to file a second amended complaint. (ECF No. 12.)

On October 18, 2019, Plaintiff filed a second amended complaint. (ECF No. 13.) On October 23, 2019, findings and recommendations issued recommending that the second amended complaint be dismissed for failure to state a claim. (ECF No. 14.) Plaintiff filed objections on November 18, 2019. (ECF No. 15.) On January 15, 2020, the district judge declined to adopt the findings and recommendations and this action is proceeding against Defendant Wallace for violation of the Fourteenth Amendment. (ECF Nos. 13, 16.)

On April 7, 2020, Plaintiff consented to the jurisdiction of the magistrate judge. (ECF No. 22.) Defendant filed an answer to the second amended complaint on June 2, 2020, and the discovery and scheduling order issued. (ECF Nos. 24, 25.) On August 25, 2020, Defendant was granted an extension of time to file a motion for summary judgment for failure to exhaust administrative remedies. (ECF Nos. 27, 28.) On August 6, 2020, Defendant consented to the jurisdiction of the magistrate judge and this matter was assigned to the undersigned for all purposes on November 24, 2020. (ECF Nos. 29, 30.)

On December 1, 2020, Defendant filed a motion for summary judgment for failure to exhaust administrative remedies.[1] (ECF No. 31.) On December 17, 2020, Defendant filed a motion for an order dismissing this action or in the alternative revoking Plaintiff's *in forma pauperis* status and a request for judicial notice. (ECF Nos. 32, 33.) On January 12, 2021, Plaintiff filed a motion to stay this matter. (ECF No. 34.) Plaintiff has not filed an opposition to any of the motions.

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by Defendants in the motion for summary judgment. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## II.

## MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies.

### A. Motion for Summary Judgment Legal Standard

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case...." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the court does not make

credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

**B. Undisputed Facts**

1. Plaintiff was on parole from June 7, 2015, through June 6, 2018. (Decl. of A. Martinez, ¶ 4.)

2. Plaintiff was a prisoner at the Fresno County Jail ("FCJ") from October 19, 2017, to July 30, 2019. (SAC, ¶ 10; Decl. of B. Keyfauver, ¶ 8.)

3. Plaintiff was a prisoner housed at Wasco State Prison ("WSP"), from July 30, 2019, through August 26, 2019. (Decl. of B. Keyfauver ¶ 8.)

4. Plaintiff was transferred to Salinas Valley State Prison ("SVSP") on August 26, 2019, where he remains incarcerated. (Decl. of S. Gee, ¶ 7.)

5. Plaintiff did not submit any grievance with the Division of Adult Parole Operations during his period of parole supervision. (Decl. of A. Martinez, ¶ 3.)

6. Plaintiff did not submit any grievance while housed at WSP. (Decl. of B. Keyfauver, ¶¶ 7-8.)

7. Plaintiff has submitted one grievance while housed at SVSP through November 1, 2020, Log No. SVSP-L-20-342. (Decl. Of S. Gee, ¶ 7.)

8. In the grievance with Log No. SVSP-L-20-342, Plaintiff alleged that his cell was cold for two weeks; he does not mention Parole Agent L. Wallace or anything about a parole hold or the failure to post bail. (Id., ¶ 8; Inmate Parolee Appeal, ECF No. 31-6 at 7.)

9. Plaintiff has not submitted any appeals to the Office of Appeals. (Decl. of H. Mosely, ¶¶ 6, 7.)

**C. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

5

administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __, 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "The defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Albino, 747 F.3d at 1166.

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2019). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates and parolees are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation,

and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

First and second level appeals as described in section 3084.7 shall be submitted to the appeals coordinator at the institution or parole region for processing. Cal. Code Regs. tit. 15 § 3084.2(c). In support of their motion, Defendant presents evidence that Plaintiff did not submit an inmate appeal while he was housed at WSP or SVP that would grieve the failure to release his parole hold. However, during the relevant time period, from October 19, 2017, to July 30, 2019, Plaintiff has housed at FCJ. (U.F. 2.) Defendant argues that Plaintiff was required to file a CDCR 602 form within thirty days of December 17, 2017, because at that time he was aware that she had not released the parole hold. However, Defendant was not in the custody of the CDCR, but was being held in the FCJ on a parole hold during the time when the inmate appeal would have been filed.

Although Defendant argues that the CDCR appeals process was available to Plaintiff, no evidence has been presented to show that Plaintiff was aware of how to file an appeal against a parole agent or had access to the CDCR 602 form and the CDCR grievance process while housed at the FCJ. Nor does Defendant submit any evidence that Plaintiff did not file a grievance addressing the failure to withdraw the parole hold with the FCJ. Here, Plaintiff was housed at the FCJ, and Defendant has not shown that the CDCR grievance process was available to Plaintiff given that he was not housed at a CDCR facility. Defendant has failed to meet her burden to demonstrate that under these circumstances the CDCR administrative process was effectively available to Plaintiff. Further, although Defendant requests an evidentiary hearing, the Court finds that an evidentiary hearing is unnecessary as Defendant has not met her burden in the first instance. Accordingly, the Court finds that Defendant has failed to meet her burden to demonstrate that no genuine issue of material fact exists and Defendant's motion for summary judgment is denied.

///

///

///

# III.

## MOTION TO DISMISS OR IN THE ALTERNATIVE REVOKE *IN FORMA PAUPERIS* STATUS

Defendant next moves for an order dismissing this action claiming that it was filed in bad faith, or in the alternative, for Plaintiff's *in forma pauperis* status to be revoked. Defendant contends that Plaintiff filed this action in bad faith to circumvent a prior order that he pay the full filing fee. Alternately, Defendant moves to revoke Plaintiff's *in forma pauperis* on the ground that he was not indigent on the date that he filed this action, he was previously denied *in forma pauperis* status in another case asserting the same claims, and there were no exceptional circumstances that prevented him from paying the filing fee ordered in the previous case.

Defendant argues that Plaintiff filed this action in bad faith because he was not indigent at the time that he filed this action. Defendant contends that in a prior case, it was made clear to Plaintiff that his case would be dismissed if he failed to pay the filing fee and when he did not pay the filing fee, the matter was dismissed. Defendant argues that Plaintiff tried to circumvent the prior court order by filing this action one week later.

### A. Defendant's Request for Judicial Notice

Defendant requests for the Court to take judicial notice of documents and orders filed in Foster v. Division of Adult Parole Operations, No. 1:19-cv-00573-LJO-JLT (E.D. Cal.). Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Defendant's request for judicial notice is granted.

### B. Whether Plaintiff was Indigent at Time Action was Filed

The Court first considers whether Plaintiff was indigent at the time this action was filed. The PLRA provides that "the court shall dismiss the case at any time if the court determines that--(A) the allegation of poverty is untrue. . . ." 28 U.S.C. § 1915(e)(2)(A). Plaintiff filed a

substantially similar complaint on April 30, 2019. See Foster v. Division of Adult Parole Operations, No. 1:19-cv-00573-LJO-JLT (E.D. Cal.).

In that action, Magistrate Judge Thurston found as follows.

> In sum, to proceed *in forma pauperis*, a plaintiff need not demonstrate that he is completely destitute, but his poverty must prevent him from paying the filing fee and providing his dependents with the necessities of life. See Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948). A " 'showing of something more than mere hardship must be made.' " Nastrom v. New Century Mortg. Corp., No. 11-cv-1998, 2011 WL 7031499, at *1 (E.D. Cal. Dec. 7, 2011) (quoting Martin v. Gulf States Utilities Co., 221 F.Supp. 757, 759 (W.D. La. 1963)), report and recommendation adopted by, 2012 WL 116563 (E.D. Cal. Jan. 12, 2012). Since Plaintiff is currently in jail, he is not providing for any dependents and Fresno County is paying for his necessities of daily life. Williams, 877 F.2d 65. Plaintiff's Inmate Account Statement shows that as of October 23, 2018, he had a balance of [] $758.03 at his disposal. (Doc. 2, p. 3.) From October 23, 2018, to April 17, 2019, Plaintiff made canteen purchases totaling $690.36, which would have been more than enough to pay the $400 filing fee for this action. The Court is entitled to consider the economic priority Plaintiff placed on the use of his money, see Olivares v. Marshall, 59 F.3d 109, 112 (9th Cir. 1995) (citing Alexander v. Carson Adult High School, 9 F.3d 1448, 1449 (9th Cir. 1993), and is entitled to honor an inmate's decision of other use of available funds which the inmate considered more worthwhile than payment of a federal court's filing fee, Olivares, at 112, (quoting Lumbert v. Illinois Department of Corrections, 827 F.2d 257, 260 (7th Cir. 1987) (Noting peanut and candy "comforts" Olivares purchased in the prison commissary; "If the inmate thinks a more worthwhile use of his funds would be to buy peanuts and candy ... than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.").) Plaintiff clearly prioritized canteen purchases over his obligation to pay the filing fee in this action.
>
> The determination whether a party may proceed *in forma pauperis* is a "matter within the discretion of the trial court and in civil actions for damages should be allowed only in exceptional circumstances." Weller v. Dickinson, 314 F.2d 598, 600 (9th Cir. 1963); see also Franklin v. Murphy, 745 F.2d 1221, 1231 (9th Cir. 1984) ("court permission to proceed *in forma pauperis* is itself a matter of privilege and not right; denial of *in forma pauperis* status does not violate the applicant's right to due process"). Plaintiff had more than enough money within a few months of the date he filed this action to pay the filing fee but chose to spend his money on canteen purchases. Thus, exceptional circumstances do not exist to grant Plaintiff's motion to proceed *in forma pauperis*.

(Exhibit C, Findings and Recommendations to Deny Plaintiff's Motion to Proceed *In Forma Pauperis* at 2-3, ECF No. 33.)

The District Judge considered Plaintiff's objections to the findings and recommendations.

> In his objections, Plaintiff argues that, though he has no dependents, he has medical needs which the jail does not provide for such that funds to make canteen purchases ensure his life and health are not jeopardized. (Doc. 7.) Plaintiff states that, family members gave him that money and that he had to use it to buy "dietary and medicinal items related to his diabetic condition" that can only be

> purchased through the canteen at "exorbitant prices." (Id.) However, the entity incarcerating Plaintiff is required to provide for his medical and related dietary needs which does not justify Plaintiff spending his money on canteen purchases over paying the filing fee for this action. If Plaintiff's needs are not met, he has recourse via the inmate appeals process and ultimately the courts. Finally, the Court is not required and declines Plaintiff's invitation to consider the average monthly balance of his account for the entire time that Plaintiff has been incarcerated. For purposes of Plaintiff's ability to pay the filing fee for this action, only the six months before he filed this action need be, and have been, considered.

(Exhibit E, Order Adopting Findings and Recommendations; Denying Plaintiff's Motion to Proceed *In Forma Pauperis*; and Ordering Plaintiff to Pay the Filing Fee, 1-2, ECF No. 33.) Plaintiff was ordered to pay the filing fee in full within twenty-one days of May 22, 2019. (Id. at 2.) Plaintiff did not pay the filing fee in that action and it was ultimately dismissed without prejudice on July 11, 2019, due to his failure to pay the filing fee. (Exhibit I.)

Plaintiff filed this action one week later on July 19, 2019, making substantially similar allegations. (ECF No. 1.) Plaintiff sought to proceed *in forma pauperis* and filed an inmate trust statement with his application. (ECF No. 2 at 3.) This statement shows that Plaintiff had a starting balance of $270.09 in his trust account on January 16, 2019. (Id.) During the six month period, six deposits were made totaling $231.10. (Id.) During this same period, Plaintiff made 18 canteen purchases totaling $506.32, and there was a credit for $5.14. (Id.)

Plaintiff has not filed any objection to the motion and a review of Plaintiff's current trust account statement demonstrates that he received $1,400.00 in May 2021 and June 2021 which was transferred out of his trust account and that he currently has no balance in his trust account. (ECF No. 36.) The Court agrees with Judge Thurston's finding that Plaintiff has had the ability to pay the filing fee in this action, but has made the decision to use those funds on other items so exceptional circumstances did not exist to grant Plaintiff's request to proceed without prepayment of fees in this action. The Court finds that Plaintiff was improvidently granted *in forma pauperis* status in this matter.

2. <u>Whether Plaintiff Acted in Bad Faith in Filing This Action</u>

Defendant also argues that Plaintiff should not be awarded for circumventing the order in the prior case in which he was ordered to pay the filing fee. Defendant contends by failing to

10

pay the fee in the prior case and then immediately filing this action he has demonstrated bad faith conduct that would justify dismissing this action.

Defendant is seeking dismissal under section 1915(e)(2)(a). The purpose of preventing abuse of the legal system is served by section 1915(e)(2)(A) because it "weed[s] out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth." Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam); see also Adkins, 335 U.S. at 344 ("The [*in forma pauperis*] statute was intended for the benefit of those too poor to pay or give security for costs. . . ."). '"Section 1915(a) does not require a litigant to demonstrate absolute destitution; no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life. " Potnick v. E. State Hosp., 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) (citing Adkins, 335 U.S. at 339). Section 1915(e) does not mandate that the court dismiss a claim upon finding that certain assertions in his affidavit are untrue; but, "it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true. Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). The purpose of section 1915(e) is not to punish litigants whose affidavits contain insignificant discrepancies. Matthews v. Gaither, 902 F.2d 877, 881 (11th Cir. 1990). While not every misrepresentation of assets would necessarily rise to the level of an untrue allegation of poverty requiring dismissal, dismissal under § 1915(e)(2)(A) would be appropriate where a plaintiff has concealed or misrepresented his or her financial assets or history in bad faith in order to obtain *in forma pauperis* status. See Cuoco v. U.S. Bureau of Prisons, 328 F.Supp.2d 463, 467–68 (S.D.N.Y. 2004).

Defendant relies on Dawson v. Lennon, 797 F.2d 934, 935 (11th Cir. 1986); Attwood, 105 F.3d at 613; Emrit v. Yahoo! Inc., C 13-5951 SBA, 2014 WL 3841015, at *3 (N.D. Cal. Aug. 4, 2014); and Poslof v. Walton, No. 1:11-CV-01407 LJO, 2012 WL 691767 (E.D. Cal. Mar. 2, 2012), report and recommendation adopted, No. 1:11-CV-01407 LJO BA, 2012 WL 968028 (E.D. Cal. Mar. 21, 2012), to argue that Plaintiff's failure to disclose that he had been denied *in forma pauperis* status in a prior case and the action had been dismissed for his failure

to pay the filing fee shows bad faith which would justify dismissal of this action.

In Dawson, the magistrate judge initially granted *in forma pauperis* status on the plaintiff's declaration that he had "no money or real estate, vehicles or other assets that would enable him to pay his own court expenses." Dawson, 797 F.2d at 935. The government challenged the grant of *in forma pauperis* status on the ground that the plaintiff had large holdings of property and money outside of prison and a number of courts had previously determined that he had substantial assets. Id. The plaintiff claimed that the assets actually belonged to a church of which he was the founder and president. Id. The court found that plaintiff had not alluded to any of these assets in his affidavit and had demonstrated bad faith. Id. The action was dismissed with prejudice. Id.

On appeal, the Eleventh Circuit held that "a district court has the discretion to dismiss a case with prejudice where a plaintiff has in bad faith filed a false affidavit of poverty." Dawson, 797 F.2d at 935. The plaintiff's "behavior in attempting to claim indigent status while failing to draw the court's attention to previous authoritative determinations of his lack of indigency is sufficient evidence of bad faith to support the district court's exercise of discretion." Id. The appellate court found that "[t]he clear pattern of attempts to deceive the courts on his financial status" in the current and other cases justified imposition of the severe sanction of dismissal with prejudice and the court clearly acted within its discretion. Id. at 936.

In Attwood, the plaintiff filed an affidavit asserting that he had "no access to, control over, or income from any bank account since 1991, and that he owned no real estate or other valuable property. Attwood, 105 F.3d at 611. The defendants filed a motion to dismiss under 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 11 which was granted as the trial court concluded that the plaintiff "intentionally misstated his income to obtain indigent status" and filed his claim in bad faith. Id. On appeal, the Eleventh Circuit noted that the magistrate judge's report detailed the plaintiff's previous litigation and that he had filed at least sixty-one claims in the Southern District of Florida. Id. His suits were regularly brought seeking *in forma pauperis* status changing only the venue or the names of the defendants. Id. In a recent case, a magistrate judge had conducted an evidentiary hearing and determined that the plaintiff's claims "had no

reasonable basis in fact" and he recommended that the district court impose Rule 11 sanctions because of the plaintiff deliberately deceived the court and filed objectively unreasonable claims. Id. at 612. The plaintiff had also filed similar claims in the district in which another district court had recommended that the claims be dismissed with prejudice after finding the plaintiff "filed a false affidavit in support of his indigent plaintiff status and had engaged in a pattern of bad faith litigation." Id.

The appellate court considered that a case may be dismissed if the allegation of poverty is untrue, or if it is satisfied that the action is frivolous or malicious under 28 U.S.C. § 1915(d) (1996). Attwood, 105 F.3d at 613. "The purpose of this provision is to 'weed out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth." Id. (quoting Matthews, 902 F.2d at 881). Where there has been a "finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics" dismissal is warranted. Attwood, 105 F.3d at 613. The appellate court considered the plaintiff's litigation history which included "false claims of indigency and his history of abusing the judicial process." Id. A two-day hearing had been held on plaintiff's financial status in a district one prior to plaintiff filing his lawsuit and he had been found not to be indigent. Id. The court had also enjoined him from filing any further suits that did not comply with Rule 11 of the Federal Rules of Civil Procedure. Id. The plaintiff was aware of the consequences of filing a false affidavit in bad faith and his actions showed "a history of bad faith litigiousness and deceit." Id. The appellate court affirmed the dismissal by the district court. Id.

In Emrit, the plaintiff had been ordered to show cause why the action should not be dismissed for filing a false application to proceed *in forma pauperis*. Emrit, 2014 WL 3841015, *1. When the plaintiff failed to respond, the matter was dismissed. Id. Thereafter, the plaintiff filed six motions, including a motion to set aside judgment and a motion to reopen the case which the court construed as a motion for reconsideration. Id. at *1, 2. The plaintiff claimed that he had inadvertently omitted from his application approximately $31,000.00 that he had received and that he had included the amount on almost every *in forma pauperis* application that he had filed. Id. at *2. The court found his excuse unpersuasive "particularly considering the

significance of the omitted information, the 'penalty of perjury' warnings in the IFP application, and Plaintiff's legal training and experience litigating cases in federal court." Id. The court went on to find that the plaintiff "intentionally misrepresented his financial condition and litigation history in bad faith[;] and because he knowingly filed a false *in forma pauperis* application concealing material information the action was dismissed with prejudice. Id.

In Poslof, a magistrate judge issued an order to show cause due to plaintiff misrepresenting his financial status on his application to proceed *in forma pauperis*. Poslof, 2012 WL 691767, *1. The plaintiff filed a writ of mandate with the Ninth Circuit Court of Appeals that was denied, and on remand, the case was transferred to a different magistrate judge. Id. The new magistrate reissued the hearing on the order to show cause and the plaintiff appeared and presented his arguments. Id. The plaintiff's application was denied and he filed an appeal to the Ninth Circuit which was denied because a magistrate judge's order was not final or appealable and the magistrate judge did not have authority to deny the application. Id. The matter was transferred back to the district court. Id.

In response to the questions on the application, Plaintiff had indicated "N/A" which the magistrate judge had construed as meaning not applicable. Id. at *2. However, the plaintiff argued that "N/A" was intended to mean not available. Id. The court found the argument not to be persuasive. Id. On the application, the plaintiff had "responded 'no' to every question seeking to identify financial or tangible assets" and had "represented he had absolutely no income, property or subsistence and absolutely no way to provide for his existence." Id. Further, the plaintiff "made no effort to qualify these responses to explain how Plaintiff was able to support his most basic needs for survival." Id. At the hearing, it was revealed that the plaintiff did have prior businesses, property, and he was obtaining assistance from others and this information was not disclosed on his application. Id. Plaintiff attempted to explain these discrepancies, but the court found that his testimony contradicted several important and relevant responses in his application and it was troubling that he insisted that the rules regarding candor to the court did not apply to him because he was not an attorney. Id. The court found that it could dismiss the action due to the misrepresentations in the application, but decided to deny the

14

application as a lesser sanction. Id.

While the instant action is distinguishable from Dawson, Attwood, Emrit, and Poslof, Plaintiff did not reveal to the Court that his prior action was dismissed for failure to pay the filing fee. This action was filed seeking to proceed without prepayment of fees almost immediately upon the dismissal of the prior case for failure to pay the filing fee. Further, a review of Plaintiff's current trust account statement does support a finding that Plaintiff filed this action in bad faith as it demonstrates that Plaintiff is receiving large monthly deposits and is transferring the funds out of his trust account which indicates he is attempting avoid paying his financial obligations.

Although the Court finds that Plaintiff acted in bad faith by ignoring the prior order requiring him to pay the filing fee and, after the case was dismissed refiled his complaint in a new action, the Court declines to dismiss this matter with prejudice at this time. The Court finds that the proper course is to allow Plaintiff to proceed with this action by paying the filing fee. Accordingly, Defendant's motion to dismiss based upon Plaintiff seeking to proceed *in forma pauperis* in this action is denied.

In the alternative, Defendant contends that the Court should revoke Plaintiff's *in forma pauperis* status and require that he pay the filing fee. Defendant argues that although this Court granted *in forma pauperis* status it should consider the priorities that Plaintiff put on his funds and revoke *in forma pauperis* status.

The Court agrees that it has the ability to consider the priorities that Plaintiff placed upon his available resources. See Olivares, 59 F.3d at 112 ("The district judge was entitled to consider Olivares's own economic choices about how to spend his money, as between his filing fee and comforts purchased in the prison commissary. . . ."); Alexander, 9 F.3d at 1449 ("When determining the ability of an in forma pauperis plaintiff to pay a partial filing fee, the court may consider the plaintiff's cash flow in the recent past, and the extent to which the plaintiff has depleted his savings on nonessentials.").

Here, as discussed above, upon review of the record, the Court finds that Plaintiff had funds during the prior six months to filing this action, and knowing that he had been denied *in*

*forma pauperis* status, he continued to make expenditures, prioritizing his personal spending over filing this lawsuit. Further, Plaintiff's current trust account statement indicates that Plaintiff has received $2,800.00 since May 2021 and has had these funds transferred out of his trust account which supports a finding that Plaintiff is seeking to avoid paying his financial obligations in this matter.[2]

Accordingly, Defendant's motion to revoke Plaintiff's *in forma pauperis* status is granted and Plaintiff shall be ordered to pay the filing fee in this matter.

## IV.

## MOTION TO STAY

Defendant moves to stay this action until the motion for summary judgment and motion to dismiss or alternatively revoke Plaintiff's *in forma pauperis* status is resolved. Given that Plaintiff's *in forma status* has been revoked and he has been ordered to pay the filing fee, the June 2, 2020 discovery and scheduling order shall be vacated. A new discovery and scheduling order will issue once Plaintiff pays the filing fee in this matter. Therefore, Defendant's motion to stay this matter is denied as moot.

## V.

## CONCLUSION AND ORDER

For the reasons discussed, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment, filed December 1, 2020, is DENIED;
2. Defendant's motion for an dismissing the action, or, alternatively, revoking Plaintiff's *in forma pauperis* status, filed December 17, 2020, is GRANTED IN PART;
3. Plaintiff's *in forma pauperis* status is REVOKED;
4. The June 2, 2020 discovery and scheduling order is VACATED;
5. Defendant's motion to stay this action pending resolution of the above motions, filed January 12, 2021, is DENIED as moot;

---

[2] The Court's records show that no payments have been made towards the filing fee in this matter.

6. Within **forty-five (45) days** of the date of entry of this order, Plaintiff shall pay the four hundred dollar ($400.00) filing fee in this matter; and

7. Plaintiff is advised that if he fails to pay the filing fee in compliance with this order, this matter will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: **June 3, 2021**

UNITED STATES MAGISTRATE JUDGE